From Richard E. Cochran, York, Pa.

---

## Commonwealth ex rel. v. Unangst, County Treasurer.

*Mandamus — County controller — Approval of — Acts of May 10, 1871, June 27, 1895, and March 27, 1913.*

Under the Act of June 27, 1895, P. L. 403, and the amending Act of March 27, 1913, P. L. 10, creating and regulating the office of county controller, an order on the county treasurer for the payment of moneys of the county, drawn by prison inspectors in discharge of their functions, in accordance with the provision of the Special Act of May 10, 1871, P. L. 706, establishing the Northampton County Prison, and prescribing its regulation and government, must be countersigned by the controller.

Mandamus. C. P. Northampton Co., Sept. T., 1922, No. 7.

*Asher Seip* and *F. P. McCluskey*, for plaintiff.

*T. McK. Chidsey* and *Francis E. Walter*, for respondent.

STOTZ, J., Oct. 9, 1922.—The relators, the Prison Inspectors of Northampton County Prison, ask that a writ of mandamus be issued, directing the respondent, the Treasurer of Northampton County, to pay the amount of an order upon the said treasurer presented by them. In the suggestion for a writ, the relators set forth the following facts, all of which are admitted by the respondent in his return:

That the Northampton County Prison was established and its regulation and government provided for by the provisions of a certain special act of assembly, entitled "An act for the regulation and government of the Northampton County Prison," approved May 10, 1871, P. L. 706; that the relators were duly appointed prison inspectors of said Northampton County Prison, and that they duly organized and are acting as such board of inspectors; that, among other things, it is the duty of the said board to direct the manner in which the said prison shall be supplied with provisions, food, etc., and that for the funds necessary for the keeping, maintaining and furnishing said prison, the prison inspectors are authorized to draw their order on the Treasurer of the said County of Northampton in such sums and at such times as shall be necessary to satisfy all just demands; that the respondent is the duly elected and acting treasurer of said county; that the relators, as the board of prison inspectors, presented their order on the said treasurer to him for payment of a bill amounting to $204.22, which order was for the payment of bread furnished to the said prison as food for the persons confined therein, and that it is a just demand incurred in the keeping, maintaining and furnishing of the said prison; and that the said respondent has refused to approve the said claim as presented and to pay the amount thereof.

The respondent, after a categorical admission of all the facts above stated, says, however, in further answer: "That the (said) order drawn on the Treasurer of the County of Northampton by the board of prison inspectors

3 D. & C.

was neither. passed upon nor audited by the Controller of the said County of Northampton." This, in turn, is admitted by the relators, and the single question raised by the pleadings is, therefore, whether the relators are entitled to have this order honored and paid by the respondent without the approval of the county controller.

It will be noted at the start that the controller is not made a party to this proceeding, and we are, therefore, not now concerned with the reason why the order was "neither passed upon nor audited by" him. The sole question is whether, under the law, orders for the payment of bills incurred in keeping, etc., the said prison, presented by the prison inspectors to the county treasurer, shall be subject to the supervision and approval of the county controller.

The special act of assembly creating the board of prison inspectors of Northampton County (Act of May 10, 1871, P. L. 706), provides, in section 20: "That for the funds necessary for keeping, maintaining and furnishing said prison, the prison inspectors are hereby authorized to draw their order on the Treasurer of said County of Northampton in such sums and at such times as shall be necessary to satisfy all just demands." The next section of the act directs:

"Section 21. That the Treasurer of the said County of Northampton shall, in addition to his other duties, keep separately a just and true account of all moneys disbursed on said prison, which accounts shall at all times be open to the inspection of the prison inspectors and each of them; he shall once in each year, in connection with the county statement, state his prison accounts, for which, after the inspection of the prison inspectors, he shall produce his vouchers and lay them before the county auditors for settlement, to be acted and reported on in connection therewith, and as all other accounts of the county are by law authorized to be settled, and shall be subject to like appeal, issue and judgment; which account, when so settled, the prison inspectors shall cause to be published in a manner similar and in connection with the annual account of county expenditures; he shall deliver to his successor in office all books, property, documents and other things held in right of his office for said prison."

It will be noted, therefore, that the act under which the Northampton County Prison is managed expressly provides that the prison accounts and the vouchers in connection therewith shall be annually submitted to the county auditors for scrutiny and settlement "as all other accounts of the county are by law authorized to be settled." By the Act of June 27, 1895, P. L. 403, the office of county auditor was abolished in counties containing 150,000 inhabitants, and the office of county controller was created in its stead. Subsequently the Act of 1895 was extended (Act of March 27, 1913, P. L. 10) to embrace counties of 100,000 inhabitants, and Northampton County thereby came under its provisions.

"It is not at all doubtful that the design of the Act of 1895 was to bring the entire finances of the county, and their administration by every branch and department of the county government, under the central and comprehensive supervision of the controller. To suppose that he was to concern himself only with the disbursements made under the direction of the county commissioners, and not at all with those under other agencies for the management of distinct departments of municipal affairs, would be to ascribe to the legislature a purpose to make the controller's office an unprofitable addition to the fiscal machinery, as well as to run counter to the explicit language of the enactment. Thus, in section 4, it is declared that the controller 'shall

have a general supervision and control of the fiscal affairs of the county and of the accounts and official acts of all officers or other persons who shall collect, receive or distribute the public moneys of the county, or who shall be charged with the management and custody thereof:'" Com. ex rel. Hollenbach *v.* County Treasurer, 16 Dist. R. 481.

All of the rights, powers and duties formerly devolving upon the county auditors have been committed by the Act of 1895 to the county controller: Lloyd *v.* Smith, 176 Pa. 213; Scranton *v.* Lackawanna County, 214 Pa. 509.

The scope of the controller's powers and duties is explicitly elaborated in the act. Section 8 provides (in part): "That he shall scrutinize, audit and decide on all bills, claims and demands whatsoever against the county, and all persons having such claims shall first present the same to the controller, and, if required, make oath or affirmation before him to the correctness thereof." And section 13 expressly enjoins that "the treasurer of said county shall pay no money out of the county treasury except on warrants drawn by a majority of the commissioners and countersigned by the controller."

Counsel for the relators earnestly contend that, because the Act of 1895 nowhere mentions the account of prison boards in counties where, like Northampton, the business of the prison is committed by a local act to a separate prison organization for exclusive management, without any supervision by the county commissioners, the Controller Act of 1895 has no application, and they point to the first and last sentences of section 13 of the act in support of their contention. It is argued that the Northampton County Prison is, under that act creating it, a quasi-corporation, occupying a field of its own, and wholly independent of any other business of the county. They say, rightly, that the county commissioners have nothing to do with the financial management of the prison, and contend that warrants or orders on the treasury for prison bills do not come within their province and are not "drawn" by them, but by the prison inspectors; and, hence, that under the provisions of section 13 warrants which must be countersigned by the controller are only such as are required to be drawn by the county commissioners. If it were otherwise intended, they say, the legislature would have expressly said so, and added a provision similar to that which, in the last sentence of section 13, brings the poor directors in certain counties within the operation of the act.

This contention, however, not only ignores the fact that nowhere in the Act of 1895 are prison inspectors exempted from its provisions, but it runs counter to the plain purpose of the act and to certain of its express provisions. Thus, section 4, as hereinbefore quoted, explicitly declares that the controller "shall have a general supervision and control of the fiscal affairs of the county and of the accounts and official acts *of all officers or other persons who shall collect, receive or distribute the public moneys of the county,* or who shall be charged with the management and custody thereof." Certainly the prison inspectors, in the due exercise of their powers, "collect, receive or distribute the public moneys of the county," and, hence, their "accounts and official acts" must come under the "general supervision and control" of the county controller. Furthermore, section 13 is emphatic in its direction that the county treasurer shall pay out no money from the treasury except upon the approval of the controller. Section 20 of the Special Act of 1871, as hereinbefore quoted, authorizes the prison inspectors "to draw their order on the treasurer" for such moneys as may be justly necessary to conduct the prison. Whether or not the orders of the inspectors require also, in strict compliance with the letter of section 13 of the Act of 1895, the signatures of a majority of the county commissioners, which would be a mere ministerial and vain perform-

3 D. & C.

ance, in view of the exclusive functions and powers of the prison board under the Act of 1871, is not the point at issue, although it would seem that section 20 of the Act of 1871, hereinbefore quoted, would supply whatever omission in this regard may appear in section 13 of the Act of 1895. The question for decision, under the pleadings, is whether the county treasurer shall pay an order presented by the prison inspectors which does not bear the countersignature of the controller. This question, for the reasons noted, must be decided in favor of the respondent.

While in Com. ex rel. Hollenbach v. County Treasurer, 16 Dist. R. 481, as well as in Lee Bros. v. Davis, 22 Pa. C. C. Reps. 492, the controversy arose over the refusal of the county treasurer to honor a requisition presented by poor directors, without the counter-signature of the controller, the reasoning by which the court in those cases arrived at the conclusion that the controller's approval was necessary is equally applicable to the case at bar, even though the legislature failed to make express mention of prison inspectors in the Act of 1895 in the same manner as poor directors are therein referred to. The language of section 13 of the act does not in fact direct in so many words that poor directors' warrants shall be countersigned by the controller, but says that the warrants for money to be used by the poor directors shall be drawn by them and not by the county commissioners. While the plain implication of section 13 is that warrants drawn by the poor directors shall have the same status as those drawn by the commissioners, in so far as they require the controller's approval for validity, the comprehensive language of section 4 makes it clear and explicit that not only poor directors and county commissioners, but "all officers or other persons who shall collect, receive or distribute *the public moneys of the county*," come under the supervision and control of the county controller, so far as their accounts and official acts are concerned. Certainly the relators fall within this category when they come to the treasurer with an order for the payment of "moneys of the county," and, as no exception appears in this section or elsewhere in the act excluding them from its provisions, it follows that they must necessarily be included.

The absence of the controller's counter-signature is, therefore, an entire justification of the treasurer's refusal to pay the order in suit, and upon the relator's demurrer to his return the respondent is entitled to judgment.

From Henry D. Maxwell, Easton, Pa.